Case 4:18-cv-02867 Document 72 Filed on 09/12/22 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
September 12, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIAR CAPITAL WORKING FUND CAPITAL, LLC, as assignee of South Coast Supply Company, | § § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-2867 |
| ROBERT W. REMMERT, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court because a reference to the United States Bankruptcy Court for the Southern District of Texas was withdrawn by Judge Hughes on the recommendation of Judge Bohm. (Dkt. 1; Dkt. 3). *See* Southern District of Texas bankruptcy cases 17-35898 and 18-3084. The plaintiff, Briar Capital Working Fund Capital, LLC ("Briar Capital"), is bringing avoidance claims that were assigned to it by the bankruptcy debtor, South Coast Supply Company ("South Coast"), in South Coast's reorganization plan. The defendant, Robert W. Remmert ("Remmert"), is the former Chief Financial Officer of South Coast.

Remmert has filed a motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Court has considered the parties' briefing, the record of this case, the records of the related bankruptcy and adversary proceedings, and the applicable law. Remmert's motion (Dkt. 64) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

South Coast, an industrial products distributor founded in 1972, filed a Chapter 11 bankruptcy petition in 2017, blaming its recent financial problems on "mismanagement on the part of certain employees who [we]re no longer employed by the company." *See* Southern District of Texas bankruptcy case number 17-35898 at docket entries 1, 4. South Coast continued to operate its business as a debtor-in-possession; the bankruptcy court appointed a Chief Restructuring Officer ("CRO") for the company but did not appoint a Chapter 11 trustee. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entries 34 and 36.

South Coast also brought an adversary proceeding against Remmert, its former CFO, in which it sought avoidance and recovery of payments under 11 U.S.C. §§ 547(b)(5) and 550 and disallowance of claims under 11 U.S.C. § 502(d). *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 123. The payments at issue in the adversary proceeding were "payments to Remmert in repayment of certain loans made to South Coast[.]" *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 123, page 2. The payments totaled $316,624.10. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 123, page 2.

When the CRO was appointed, Briar Capital was South Coast's sole secured lender, and Briar Capital had filed a proof of claim in South Coast's bankruptcy asserting a claim for $2,563,191.07. *See* Southern District of Texas bankruptcy case number 17-35898 at claim document 23-1, page 2 and docket entry 241, page 12. Briar Capital's proof of claim stated that Briar Capital had a lien on property valued at $3,926,263.88. *See* Southern

District of Texas bankruptcy case number 17-35898 at claim document 23-1, page 2. Briar Capital's loan agreement with South Coast stated that the loan was collateralized with "all of [South Coast's] now owned or hereafter acquired assets, whether tangible or intangible[.]" See Southern District of Texas bankruptcy case number 17-35898 at claim document 23-1 part 2, page 4.

Less than two weeks after South Coast filed its bankruptcy petition, Briar Capital moved for the appointment of a Chapter 11 case trustee under 11 U.S.C. § 1104, leveling charges against South Coast's leadership of "fraud, dishonesty and incompetence" and asserting that the company's senior management "c[ould ] not be trusted with the fiduciary responsibilities of a debtor-in-possession." See Southern District of Texas bankruptcy case number 17-35898 at docket entry 20, page 4. South Coast made two motions requesting authority to use cash collateral, pointedly "reserv[ing] the right to object to Briar Capital's claim upon full review of its proof of claim." See Southern District of Texas bankruptcy case number 17-35898 at docket entry 4 and docket entry 83, page 3. Briar Capital filed two objections to South Coast's use of cash collateral in which it accused South Coast of "breach[ing] its duties and obligation under its loan agreement regarding reporting and cash management[,] transferr[ing] substantially all of its inventory at a drastically reduced discount[,] and divert[ing] Briar Capital's cash collateral away from a blocked account." See Southern District of Texas bankruptcy case number 17-35898 at docket entry 23, page 1 and docket entry 102. In its second objection, Briar Capital contended that, since the beginning of the bankruptcy case, South Coast had "repeatedly failed to meet its operating budget" and proven itself "unable to provide adequate protection for the use of Briar

Capital's cash collateral." *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 102, pages 1–2. When South Coast sought post-petition debtor-in-possession ("DIP") financing, it opted not to accept such financing from Briar Capital, even though Briar Capital had offered a DIP financing proposal at South Coast's request. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 102, pages 1–2.

Instead of borrowing from Briar Capital, South Coast requested and received an order from the bankruptcy court authorizing it to obtain DIP financing from a company called Solstice Capital, LLC ("Solstice"). *See* Southern District of Texas bankruptcy case number 17-35898 at docket entries 110 and 121. The bankruptcy court's order approving the DIP financing stated that Solstice and Briar Capital had reached an agreement whereby Briar Capital would have lien priority over Solstice with regard to property obtained by South Coast prior to the date on which Solstice first advanced DIP financing to South Coast, while Solstice would have lien priority over Briar Capital with regard to property obtained by South Coast after that date. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 121, pages 4–6. Under this arrangement, the bankruptcy court found that Briar Capital's interests in its collateral "[we]re adequately protected by the proposed DIP Financing, which preserve[d] for Briar Capital the proceeds of all inventory and accounts to the date on which [DIP] financing commence[d]." *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 121, page 5. Briar Capital also received a junior security interest in the collateral in which Solstice had the first lien. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry

121, page 4. The bankruptcy court's order approving the DIP financing additionally noted that "Briar Capital ha[d] filed a Proof of Claim in the amount of $2,563,191.07 as of the Petition Date" and that Briar Capital had "assert[ed] that it [wa]s over-secured, with collateral value of $3,926,263.88 according to its Proof of Claim." *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 121, page 2.

After obtaining approval for DIP financing from Solstice, South Coast filed a proposed reorganization plan under which it would sell certain inventory, accounts, intellectual property, contract rights, and other assets to Solstice for $700,000, $500,000 of which would go into the unsecured creditors account and $200,000 of which would go into a debtor-in-possession account to pay for administrative and priority claims. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 168. According to the CRO's testimony at the confirmation hearing, the proposed sale did not include any "inventory [or] accounts receivable" in which Briar Capital had a first-priority lien interest. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 241, page 16.

Briar Capital objected to confirmation of the proposed reorganization plan. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 209. In its objection, Briar Capital argued that the proposed reorganization plan improperly "fail[ed] to provide Briar Capital with a lien that attache[d] to the proceeds" of the sale to Solstice. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 209, page 4. Even though other assets were earmarked for repayment of Briar Capital's loan to South Coast, Briar Capital contended that South Coast had overstated those assets' values and

that South Coast was "unable to show [that] the myriad of speculative assets offered instead of the Solstice proceeds [wa]s a legally acceptable equivalent of the $700,000 in cash." *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 209, pages 4–7.

To address Briar Capital's concerns, South Coast modified its proposed reorganization plan to assign its avoidance action against Remmert—which became this case—to Briar Capital. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 230, pages 46–47 and docket entry 241, pages 19–20. The modified plan also allowed Briar Capital to pocket any amounts that it received under the plan, even if those amounts exceeded South Coast's debt to Briar Capital; as originally proposed, the plan had required Briar Capital to give any surplus to South Coast for deposit into the unsecured creditors account. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 230, pages 22–23, 46–47.

After South Coast made its modifications to the reorganization plan, Briar Capital withdrew its objection. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 226. The modified plan was confirmed. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 230. At the confirmation hearing, the CRO testified that, under the plan, Briar Capital had received or would receive $896,000 in cash; roughly $1,795,000 in inventory; and approximately $600,000 in accounts receivable, of which "about $400,000" was likely collectible. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 241, pages 21–26. Assuming that only $400,000 of the accounts receivable were collectible, the total value of the assets

received by Briar Capital was $3,091,000. This amount did not include any estimate of the value of the avoidance claim against Remmert. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 241, page 27.

Briar Capital pursued the avoidance action against Remmert as assignee of South Coast. Judge Bohm recommended withdrawal of the reference to the bankruptcy court. (Dkt. 1). Judge Hughes withdrew the reference (Dkt. 3), and the case was then reassigned to the undersigned judge. (Dkt. 18). Remmert has now filed a motion to dismiss under Rule 12(b)(1) on the basis that Briar Capital lacks standing to prosecute the avoidance action.

## II.  LEGAL STANDARDS

### a. Rule 12(b)(1)

A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008). The subject matter jurisdiction of a federal court can be challenged at any stage of the litigation. *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999). "Furthermore, parties cannot confer subject matter jurisdiction on federal courts." *Id*.

### b. The standing to pursue avoidance actions

Briar Capital is pursuing avoidance claims that were assigned to it by South Coast in South Coast's reorganization plan. Those claims seek avoidance and recovery of payments under 11 U.S.C. §§ 547(b)(5) and 550 and disallowance of claims under 11 U.S.C. § 502(d).

11 U.S.C. § 1123(b)(3)(B) allows a Chapter 11 reorganization plan to authorize a party other than the debtor or a trustee to exercise avoidance powers. *McFarland v. Leyh (In re Texas General Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995). "Under Section 1123(b)(3)(B), a party other than the debtor or the trustee that seeks to enforce a claim must show (1) that it has been appointed, and (2) that it is a representative of the estate." *Id.* (adopting a test articulated by the Tenth Circuit in *In re Mako*, 985 F.2d 1052, 1054 (10th Cir. 1993)). The bankruptcy court's approval of a plan that clearly appoints a stranger to the estate to enforce an avoidance claim satisfies the first element. *Id.* "As for the second element, courts apply a case-by-case analysis to determine whether the appointed party's responsibilities qualify it as a representative of the estate. The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* (citation and quotation marks omitted).

The question of whether the two-part test adopted by the Fifth Circuit in *McFarland* is met "is generally a question of law[,]" and a party that cannot satisfy the test lacks standing to bring the purportedly assigned claim. *Id.* at 1334–36, 1339. The standing

determination is jurisdictional. *See In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (characterizing the question of standing to assert post-confirmation claims based on adequacy of preservation language in confirmed reorganization plan as a jurisdictional question); *In re United Operating*, 540 F.3d 351, 354–56 (5th Cir. 2008) (same) ("Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter.").

### III. ANALYSIS

The Court concludes that Briar Capital does not have standing to pursue the avoidance claims against Remmert.

#### a. The *McFarland* test is not met.

The second element of the test adopted by the Fifth Circuit in *McFarland* is not met. A successful recovery by Briar Capital would not benefit South Coast's estate or its unsecured creditors. To the contrary, South Coast's reorganization plan explicitly allows Briar Capital to pocket any amounts that it recovers from Remmert, even if the recovery exceeds the amount necessary to pay South Coast's debt to Briar Capital; and the plan does not require Briar Capital to give any of the Remmert recovery, under any circumstances, to South Coast or any other creditors. *See* Southern District of Texas bankruptcy case number 17-35898 at docket entry 230, pages 46–47.

Briar Capital's recovery from Remmert will not benefit anyone but Briar Capital. Accordingly, the second element of the test adopted by the Fifth Circuit in *McFarland* is not met, and Briar Capital lacks standing to pursue the avoidance actions against Remmert. *Texas General Petroleum Corp. v. Evans*, 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986)

("Intervenor clearly comes into court as a creditor of the debtor trying to exercise the avoidance power for itself as a sole creditor, not for the benefit of the debtor's estate or the creditors as a whole. . . . Furthermore, the avoidance of any liens by Marmid on the property involving the mineral interests will not benefit the debtor's estate or the general body of creditors of the estate. In the absence of that showing, Marmid is precluded from asserting its claims."); *see also In re Amarex, Inc.*, 96 B.R. 330, 334 (W.D. Okla. 1989) ("[I]n instances in which the purported representative has been found to be a 'stranger' to the bankruptcy estate, such that a successful recovery would only benefit the representative and not the estate or its unsecured creditors, courts have concluded that § 1123 does not authorize such a party to prosecute a claim, in spite of a provision in a plan of reorganization that authorizes the representative to do so."); *In re Railworks Corp.*, 325 B.R. 709, 718–19 (Bankr. D. Md. 2005) ("The second requirement [of the test exists] to ensure that the person seeking to enforce the claim will not violate the longstanding prohibition against an individual creditor recovering a debt for his own personal gain. . . . The Bankruptcy Code specifically requires that the stranger to the estate enforcing these claims do so as a representative of the estate, and courts have interpreted this as a requirement that any recovery benefit the estate or unsecured creditors."); *cf. McFarland*, 52 F.3d at 1336 (holding that a liquidating trustee had standing to assert a fraudulent conveyance action because the liquidating trust "act[ed] on behalf of the Class 5 unsecured creditors" and "[t]he proceeds from th[e] fraudulent conveyance action w[ould] benefit the Class 5 unsecured creditors").

### b. The Fifth Circuit has not authorized the sales of avoidance actions created by 11 U.S.C. § 547.

Briar Capital acknowledges that it will be the sole beneficiary of any recovery that it obtains from Remmert in this case. (Dkt. 68 at p. 12). However, Briar Capital argues that it need not satisfy the *McFarland* test because it "purchased" the avoidance action against Remmert by withdrawing its objection to South Coast's reorganization plan and in turn "allowing" the distribution of the $700,000 that Solstice paid for South Coast's assets to other creditors and the debtor-in-possession account. (Dkt. 68 at pp. 12–15). Relying heavily on the Seventh Circuit's opinion in *Mellon Bank v. Dick Corp.*, 351 F.3d 290 (7th Cir. 2003), Briar Capital contends that South Coast's assignment of the Remmert avoidance action was an "effective[] s[ale]" of property of the bankruptcy estate in which Briar Capital paid consideration through its "forbearance[.]" (Dkt. 68 at p. 11). Since Briar Capital's forbearance constituted consideration for a sale by South Coast of the avoidance actions against Remmert, the argument continues, Briar Capital has standing to pursue the case against Remmert even though Briar Capital's recovery from Remmert will not benefit anyone but Briar Capital. (Dkt. 68 at pp. 9–12).

The Court disagrees. As Briar Capital (to its credit) admits, the Fifth Circuit has expressly reserved the "question whether a trustee [or debtor in possession][1] may sell . . .

---

[1] With a few exceptions not relevant here, a debtor in possession in a Chapter 11 case "ha[s] all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee[.]" 11 U.S.C. § 1107; *see also In re Gandy*, 299 F.3d 489, 497 n.10 (5th Cir. 2002) ("The right of the trustee to commence an avoidance action is extended to a debtor in possession[.]"). The caselaw discussing trustees' ability (or inability) to sell avoidance actions accordingly informs the analysis of whether debtors in possession may sell those actions.

the power to avoid preferences under [11 U.S.C.] § 547[,]" noting a "split of authority" on the issue. *In re Moore*, 608 F.3d 253, 261 & n.13 (5th Cir. 2010). In *Moore*, the Fifth Circuit held that a trustee may "sell causes of action that he has inherited from creditors" under a different statute, 11 U.S.C. § 544(b). *Id*. at 261–62. 11 U.S.C. § 544(b) avoidance claims, however, "are unique among the trustee's avoidance powers, because they do not create a cause of action, but allow the trustee to step into the shoes of a creditor with an existing claim." *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-4839, 2018 WL 747408, at *10 (D. Minn. Feb. 7, 2018). The cases recognize a distinction "between avoidance claims that the bankruptcy statute creates specifically for the trustee and pre-existing claims inherited from creditors under [11 U.S.C.] § 544(b)." *Id*. In line with that distinction, the Fifth Circuit emphasized in *Moore* that its analysis "focus[ed] narrowly on the trustee's ability to sell causes of action . . . that exist independent of the bankruptcy proceeding." *Id*. at 261.

Given the Fifth Circuit's reservation of the question, the Court will follow the numerous cases holding that outright sales of avoidance actions created by 11 U.S.C. § 547 are impermissible. *See, e.g., In re Salas*, No. 318-2662, 2020 WL 9172379, at *4–6 (Bankr. M.D. Tenn. Dec. 7, 2020) ("Other courts have refused to allow trustees to sell their powers to pursue avoidance actions and have not recognized that a purchaser has standing to assert the trustee's powers on their own behalf."); *In re McGuirk*, 414 B.R. 878, 879 (Bankr. N.D. Ga. 2009) ("A trustee's avoidance powers, including those under Sections 547, 548 and 549 of the Bankruptcy Code, are unique statutory powers intended to benefit the estate, not a single creditor."); *In re North Atlantic Millwork Corp.*, 155 B.R. 271, 281

(Bankr. D. Mass. 1993) ("[T]he statutory scheme is clear. Absent section 1123(b)(3)(B), section 547 of the Bankruptcy Code only gives trustees and debtors-in-possession . . . the power to avoid preferential transfers, although most courts have found an implied but qualified right for creditors' committees to initiate adversary proceedings[.]"); *In re S&D Foods, Inc.*, 110 B.R. 34, 36 (Bankr. D. Colo. 1990) ("The Courts have consistently held that only the trustee, the debtor in possession, or other representative of the estate under § 1123(b)(3)(B), may enforce the avoidance powers under §§ 547 and 548."); *see also In re Boyer*, 372 B.R. 102, 105 (D. Conn. 2007) ("The sale or assignment of avoidance claims to an objecting creditor is not permitted if the creditor intends to pursue the claims on its own behalf."). The *Boyer* opinion convincingly reasons that "only th[e] trustee or debtor-in-possession represents the interests of all the creditors in maximizing the value of the debtor's estate" and that "by allowing one creditor to buy a claim from the trustee and pursue that claim on his own behalf, that creditor may be allowed to recover more of the estate's assets than would otherwise rightfully be due to that creditor." *Boyer*, 372 B.R. at 106. Furthermore, a prominent bankruptcy treatise, specifically referencing the *Mellon Bank* case on which Briar Capital relies, has noted that:

> [b]y design, a trustee is supposed to pursue avoidance actions for the benefit of the estate and its creditors, rather than a particular party. In addition, there is also the concern in the chapter 11 context that a debtor in possession might bargain away avoidance actions too cheaply at the expense of the estate, or bargain away the rights of unsecured creditors for the benefit of secured parties (which appears to have occurred in the *Mellon Bank* case).
> 7 *Collier on Bankruptcy* ¶ 1109.05[4].

Given the persuasive concerns articulated by *Boyer* and the *Collier* treatise, and considering the absence of explicit authorization from the Fifth Circuit for sales of 11

13 / 14

U.S.C. § 547 avoidance actions, the Court concludes that Briar Capital lacks standing here. By all appearances, Briar Capital, at all relevant times, was oversecured and had a significant equity cushion in its collateral. Nevertheless, simply through an objection to South Coast's confirmation plan, Briar Capital obtained avoidance claims directed at payments totaling more than $300,000. Briar Capital is not required to remit any of the recovery on the avoidance claims to South Coast or to any other South Coast creditors, even if the recovery exceeds the amount necessary to pay South Coast's debt to Briar Capital. The Court concludes that the purported sale of South Coast's avoidance claims against Remmert did not give Briar Capital standing to pursue those claims.

## IV.    CONCLUSION

Remmert's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (Dkt. 64) is **GRANTED**. Briar Capital's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Any other pending motions are **DENIED AS MOOT**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, on September 12, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE